16b 633|
6ap428|
16b 633
171 NY °181

## ANDREWS *vs.* BOND.

On the 2d of April, 1850, A. made an order upon the defendant as follows:
" Sir: Please deliver to L. A. a note made by J. P. for $225, dated about
June 13th, 1849, payable at the Commercial Bank of Rochester, to my order,
and indorsed by me and delivered to you, in June or July last, payable
ninety days from date." This order was accepted by the defendant, on the
day of its date. On the 6th of July, 1849, the note was negotiated at the
Bank of D., by the defendant, and the money advanced upon it. Subse-
quently, but at what precise time did not appear, the note was paid by the
maker, to the bank. In an action by L. A. to recover damages for the con-
version of the note described in the order, *Held*,

1. That the acceptance of the order by the defendant amounted to an admis-
sion by him that the statements therein in relation to the note were true,
and that A. had the right to control the note, as against the defendant, and
also to a promise or agreement to surrender the note to L. A.
2. That the order also proved that the note was indorsed and delivered to the
defendant, and that he was the lawful holder, and therefore authorized to
negotiate the note, and transfer the legal title thereto to any *bona fide*
transferree.
3. That in the absence of any proof as to the time when the note was paid, the
presumption was that it was paid when it fell due. And that consequently
there was no note in existence at the date of the order, and the plaintiff ac-
quired no title to the note described therein.
4. That if the note was still in existence, as a subsisting obligation, at the date
of the order, the defendant had previously transferred it to the bank, which
thereby acquired a valid title to it, even against A., and all persons claim-
ing under him; A. at the time of giving the order having no title which he
could convey.
5. That the defendant was not *estopped*, by his acceptance of the order, from
setting up the defense that the note was then extinguished.

The lawful possession of a negotiable promissory note, operates as a full
authority to the holder—so far as innocent third persons are concerned—to
negotiate and transfer all right and title to the instrument.

Under a general denial of the allegations in the complaint, the defendant may
introduce any evidence which goes to controvert the facts which the plain-
tiff is bound to establish in order to sustain his action.

Where an action sounding in tort is commenced, for the conversion of a prom-
issory note, and the pleadings are framed accordingly, and the suit is tried
as an action of tort, it is too late for the plaintiff, after an appeal, to ask
that the complaint be amended, and the suit regarded as an action to
recover the avails of the note as money had and received.

The code has not abolished the distinction between tort and assumpsit.

THIS was an appeal by the plaintiff from a judgment rendered at a special term. The complaint alledged, that on the first day of January, 1850, at the town of Mt. Morris, a promissory note dated on or about the 13th day of June, 1849, made by James Parsons, by his agent Thomas Parsons, was delivered to the defendant by one Daniel Aylesworth, to be by him collected and the avails thereof applied by the said Bond in payment of a promissory note, made and delivered by said Aylesworth to Bond; that afterwards and on the first day of April, 1850, Aylesworth paid the said last mentioned note, and on the 2d day of April, 1850, sold to the plaintiff the note first mentioned, for a valuable consideration, and thereupon made his order in writing, directed to the defendant, and requesting him to deliver to the plaintiff the said promissory note, and the defendant agreed to deliver the same to the plaintiff. That afterwards and on the 20th day of September, 1850, the plaintiff demanded of the defendant the said note, and the defendant refused to deliver the same, and had converted it to his own use. The plaintiff therefore demanded judgment for his damages, to be assessed by the court, and that he have execution therefor against the body of the said defendant. The defendant by his answer put in issue all the allegations in the complaint. The action was brought to trial at the circuit court in the county of Livingston, on the 6th day of September, 1851, and was tried before the presiding justice without a jury. The plaintiff introduced as evidence an order with the acceptance written thereon, of which order and acceptance the following is a copy; the signature of the defendant to said acceptance being admitted, viz: "JAMES R. BOND—SIR : Please to deliver to Lansing Andrews a note made by James Parsons, by his agent Thomas Parsons, for two hundred and twenty-five dollars, dated about June 13th, 1849, payable at the Commercial Bank of Rochester, to my order, and indorsed by me and delivered to you in June or July last, payable ninety days from date. And oblige yours, DANIEL AYLESWORTH. April 2, 1850. Accepted, April 2, 1850. J. R. BOND." The defendant objected to the introduction of the order as evidence, on the

Andrews *v*. Bond.

ground that there was no evidence that the plaintiff had any title to the note, which objection was overruled by the justice, and the counsel for the defendant excepted. George Hastings, a witness on the part of the plaintiff, testified that shortly before the commencement of this action, in the month of September, 1851, at the request of the plaintiff, he called on the defendant and demanded the note described in the order, and that the defendant refused to deliver it; also that he had computed interest on said note and that the whole amount of the note and interest thereon was $256,24. On his cross-examination, the witness said this action was commenced in the month of October, 1850; that when he called on Bond for the note, Bond did not state where the note was, and did not claim to own it. The plaintiff here rested. The defendant moved for a nonsuit on the grounds, First. That the plaintiff had shown no title in himself. Second. That it did not appear but that Andrews was acting as the servant of Aylesworth. Which motion was denied by the court. The defendant offered as evidence the following certificate. " I certify that the note mentioned in the annexed draft or order marked A. was negotiated at the Bank of Dansville, on the 6th day of July, 1849, brought by James R. Bond, the defendant in the above described action, and the money paid to amount of said note. That the same note has since been collected of the maker and the money received by the Bank of Dansville. The above facts are all personally known to me. I am, and was on the 6th day of July, 1849, cashier of said bank. May 28, 1851. L. C. WOODRUFF." This was received under a stipulation of the plaintiff's attorney, that such statement should be read to the jury on the trial as evidence, if the court should decide that the testimony of Woodruff as to the matters therein stated, would be competent and proper evidence in this action; the right of objection to the testimony being reserved. The draft or order mentioned in this certificate was the one above set forth. The plaintiff objected to the introduction of this testimony, for the following reasons: 1st. That the answer of the defendant did not present or set forth any such defense as was sought to be estab-

lished by said testimony. 2d. That the defendant was estopped by his own acts from setting up such a defense. The objection was overruled by the court and the evidence admitted. To this decision the counsel for the plaintiff excepted. The evidence being submitted, the court rendered judgment for the defendant for costs.

*Geo. Hastings*, for the appellant. I. The acceptance of the order by Bond, admits the genuineness of the signature of the drawer. (*Story on Bills*, §§ 113, 262, 263, 264.) II. The order accepted by Bond is an assignment of the demand described therein. This is true as to bills of exchange, and the same reason applies to this case. (*Adams* v. *Robinson*, 1 *Pick.* 461. *Gibson* v. *Cook*, 20 *Id.* 15. *Griffith* v. *Reed*, 21 *Wend.* 502. *Burrall* v. *Jacot*, 1 *Barb. S. C. Rep.* 165.) III. Although the common words, "value received," are not contained in the order, a sufficient consideration is expressed. The consideration to bind the acceptor must move from the drawer to him. The drawer says in effect to the acceptor, " for value received by you ;" and it is enough if the consideration is expressed in any other terms. In this case the order is for a note which had been previously delivered by the drawer to the acceptor, and the reception of the note, acknowledged as it is by the acceptance, is a sufficient consideration. What may be the consideration between the drawer and payee, in no way concerns the acceptor. IV. The defendant having accepted the order, is estopped from setting up that the note mentioned in the order had no existence, or had been previously converted by him. The transaction was a sale of the note by Aylesworth to Andrews, to which Bond was privy. (*Cowen & Hill's Notes*, 202 to 205. *Foster* v. *Newland*, 21 *Wend.* 94. *Watson* v. *McLaren*, 19 *Id.* 557. *Petrie* v. *Feeter*, 21 *Id.* 172. *Dezell* v. *Odell*, 3 *Hill*, 215. *Kennedy* v. *Strong*, 14 *John.* 128.) V. The defense attempted is not admissible under the answer. The answer is a general denial, and simply puts in issue the reception of the note by the defendant, its purchase by the plaintiff, and the defendant's refusal to deliver it. If it had been converted by the defendant before the

Andrews *v.* Bond.

sale, that is new matter, and should have been alleged. VI. The justice at the circuit erred in giving judgment generally for the defendant. The judgment at most should have been a judgment of nonsuit.

*R. P. Winsor,* for the respondent. I. The plaintiff failed on the trial of this action to make out a case that would entitle him to recover for the conversion of the note in question, unless he established the fact that the general or special property in the note was in him; that the plaintiff was the owner of the same, or that he was entitled to the possession of the same. (*Hotchkiss* v. *McVickar,* 12 *John.* 403. *Sheldon* v. *Soper,* 14 *Id.* 352.) II. It did not appear on the trial of this action but that Aylesworth was yet the owner of the note in question; it did not appear but that the note was delivered to the appellant as the servant of Aylesworth. The presumption from the papers is that he was so acting; if so, the possession of the note by the appellant would be nothing more than the possession by Aylesworth. The possession by the servant, is possession by the principal or master. The servant cannot maintain an action for conversion of property; he has no separate interest and can have none. (1 *Chitty's Pl.* 5th *Am. ed.* 139. 7 *Cowen,* 194.) III. The appellant has alleged in his complaint that this note was delivered to Bond (the respondent) by Aylesworth, to secure an indebtedness held by Bond against Aylesworth. Bond was then the legal holder and possessor of the note, and as such it could not be obtained from him, even by the lawful owner himself, until the principal indebtedness had been paid; nor was the respondent bound to deliver the note until the same had been paid; and the undertaking by Bond to give up the note was merely gratuitous on his part. It was necessary for the appellant to show that this indebtedness had been paid and that he was the transferree of the note; and the promise by Bond to deliver the note to Andrews was void, and was not binding until this was shown. IV. The acceptance by Bond amounted to nothing; it was void for want of consideration; it was a gratuitous undertaking. In fact there is no evidence that there was

any such note in existence. If the appellant was the real owner of the note, it was necessary for him to show that the same was in possession of and under the control of the respondent; and the acceptance was void until this fact was shown. (*Atkinson* v. *Manks*, 1 *Cowen*, 708. *Mason* v. *Munger*, 5 *Hill*, 613.) V. The order by Aylesworth on the respondent is not a bill of exchange, and cannot in any manner be treated as such. It does not import a consideration, and by the acceptance it cannot be presumed that the note was in the possession of the respondent. Bills of exchange are payable always in money; the rules applicable to such paper cannot be applied to the present case. It can only be called a contract, an undertaking of Bond, and it was necessary that the appellant should both aver and prove a consideration. (*Story on Bills.* 1 *Cowen's Tr.* 160. *Cook* v. *Satterlee*, 6 *Cowen*, 108. *Atkinson* v. *Manks*, 1 *Id.* 707, 8.) VI. The appellant could not in any case recover against the respondent in this form of action, for a conversion of the note. It came into the possession of Bond legally and as collateral security for the payment of an indebtedness by Aylesworth to Bond; while in the possession of Bond it was transferred by him and discounted at the Bank of Dansville, before the time of drawing this order on Bond and before his acceptance thereof. Under such circumstances a demand of the note on the part of the appellant and a refusal to deliver the same on the part of the respondent does not constitute a conversion, and the appellant cannot maintain that form of action. (*Kelsey* v. *Griswold*, 6 *Barb.* 436. *Aldmer* v. *Jarmain*, *Har. Dig.* 6398. *Hallenbake* v. *Fish*, 8 *Wend.* 547. *Packard* v. *Getman*, 4 *Id.* 613. *Stierneld* v. *Holden*, 6 *Dow. & Ry.* 17. 4 *B. & C.* 5. *Ry. & Moo.* 219.) VII. The appellant insists that by the acceptance of this order the respondent was estopped from showing that there had been a previous disposal of the same. The doctrine of estoppel does not apply to this case. There have been no representations on the part of the respondent on which the appellant has acted. Taking the statement as set forth in the complaint, the fact there set up is that the note was sold by Aylesworth to the appellant, and that after the sale he made the order

Andrews v. Bond.

on the respondent. The only act put forth by the appellant after the sale of the note was to demand the note from Bond. And the only act done by the respondent after the alleged sale was a promise to deliver the same to appellant at the request of Aylesworth. The complaint sets up, 1st, a sale of the note to Andrews, and 2d, afterwards the making of the order on Bond. They were not contemporaneous acts. VIII. The appellant also insists that as the respondent has denied all matters set forth in the complaint he cannot now come forward and take advantage of the same. The rule of pleading is that the matters set forth by the party are to be construed against him and in favor of the opposite party. (1 *Chit. Pl.* 195.) The allegations of the plaintiff in the complaint may, if necessary, be taken as so many admissions by him. IX. The respondent could not be estopped in any way from proving his defense. The transaction, as proved on the trial, did not amount to a sale, and no property was transferred by this order. Bond merely agreed to deliver the order at some future time. The remedy of the appellant should have been upon the special undertaking. (*Burrall* v. *Jacot*, 1 *Barb.* 165.) As to whether this was a sale or not of the property, was it not a question of fact passed on at the trial? X. The appellant insists also that the defense was inadmissible under the pleadings. The action was for a conversion of property. Any matter tending to show that the property was not converted was admissible under the general denial; and also matters going to show that it was impossible for the defendant to have converted them to his own use is equally admissible.

*By the Court,* Johnson, J. The action is for an alleged tort, in the conversion of a negotiable promissory note. The complaint alleges a transfer of the note to the plaintiff on the 2d day of April, 1850, and a demand by the plaintiff and refusal to deliver by the defendant on the 20th September, 1850. The only evidence of the transfer of the note to the plaintiff is the order of Aylesworth, to whose order the note was alleged to be payable, dated the 2d April, 1850. It is doubtful, I think, whether this order by Aylesworth to deliver the note to the

plaintiff was sufficient evidence, of the transfer of the title of the note to the latter, without any delivery. But assuming it to be sufficient, there are still insurmountable obstacles in the way of the plaintiff's recovery in this action. The order alleges that the note was endorsed by Aylesworth and delivered by him to the defendant in June or July, 1849; that it was dated the 13th June, 1849, and payable in ninety days from its date. The acceptance of this order by the defendant amounts to an admission by him that the statements therein, in relation to the note are true, and that Aylesworth had the right to control the note, as against him, the defendant, and also to a promise or agreement to surrender the note to the plaintiff.

But the order also proves that the note was indorsed and delivered to the defendant, and that he became and was the lawful holder and was thus placed in a situation to enable him to negotiate the note and transfer the legal title thereto to any bona fide transferree. The proof, about which there is no contradiction, then shows that on the 6th of July, 1849, the note was negotiated at the Bank of Dansville by the defendant, and the money advanced by the bank upon it, and that the maker subsequently paid the note. The evidence does not show the precise date at which the note was paid. The proof is merely that the note was paid by the maker subsequent to the transfer to the bank, and in the absence of all proof to the contrary, I apprehend the presumption is that it was paid when it fell due. This being so, there was no note in existence at the date of the order under which the plaintiff claims title, and consequently he never could have acquired any title to it. But if the presumption under the evidence were otherwise, and that the note was still in existence as a subsisting obligation at the date of the order, it does not aid the plaintiff.

It is clear that the defendant had transferred the note long before, to the bank, which thereby acquired a valid title to it, even against Aylesworth and all persons claiming under him. Aylesworth, at the date of the order, had no title which he could convey. The lawful possession of the note by the defendant, of itself, operated as a full authority to him, so far as inno-

Andrews *v.* Bond.

cent third persons were concerned, to negotiate and transfer all right and title to the instrument. The defendant had, in fact, transferred it, and Aylesworth's title was gone. And although Aylesworth might have maintained the action in this form, against the defendant, if the latter had in fact no right to transfer the note as between them, it does not follow that it can be maintained by the plaintiff. His right to maintain the action rests exclusively upon his title and right of possession to the note, and if there was no such note in existence, or if Aylesworth clearly had no title to it, if it had been in existence, at the date of the alleged transfer, the plaintiff acquired no right or title, and his action must fail. The defendant may have converted the property of Aylesworth and not that of the plaintiff.

Had the property in question been something other than a negotiable instrument, the defendant could not, without some authority, have transferred Aylesworth's title, had he undertaken to do so. The title of the original owner still remains in him, notwithstanding a wrongful conversion, and he may after such conversion transfer a good title to a third person, at any time before judgment and satisfaction for the wrong. And such third person upon demand and refusal may maintain the action against the person in possession of the thing thus refusing, because there is a conversion of his property. (*Robinson* v. *Weeks*, 6 *Howard Pr. Rep.* 161.) But the rule is necessarily different in regard to negotiable instruments, where the law adjudges that the possessor has the right to transfer the title to the bona fide indorsee or bearer,

It is insisted by the plaintiff's counsel that the defendant having accepted the order, admitted that the note was not only in existence but under his control, and promised to deliver it, and that he is now estopped from setting up that the note was then extinguished. But the principle of estoppel does not apply. It does not appear that the plaintiff parted with any thing or took any step by which he will be liable to be injured, on the faith of the acceptance. This the plaintiff was bound to show before he could preclude his adversary from alleging the truth. It is also contended on behalf of the plaintiff, that the

Andrews v. Bond.

defendant could not under the general denial of the facts alleged in the complaint, set up the prior transfer and payment of the note. Under a denial of the allegations in the complaint, the defendant may introduce any evidence which goes to controvert the facts which the plaintiff is bound to establish in order to sustain his action. Here it was essential for the plaintiff to make out a title or right to the possession of the note, and the evidence objected to went directly to controvert the plaintiff's title. It is also suggested by the plaintiff's counsel that this may be regarded as an action to recover the avails of the note as money had and received, and the power to amend the complaint is invoked, if necessary. But we cannot fail to see from the pleadings that it is clearly an action sounding in tort, and that it was commenced and tried as such, and it is too late now for the plaintiff to attempt to change its character. We cannot know what defense the defendant might have interposed had the action been founded upon the assumpsit. The code has neither obliterated nor obscured the broad and fundamental distinction between tort and assumpsit, and it would be dangerous in the extreme, and a reproach upon the administration of justice, to allow the entire character of the action to be changed now, and to determine the rights of the parties upon the evidence before us, when by such change their rights must obviously depend upon questions which have never been tried or even put in issue. It is far better that the plaintiff should suffer the consequences of his mistake in the form of his action, than that justice should be meted out by a standard so uncertain, or rather without any standard whatever.

The judgment of the special term was clearly right, and a new trial must be denied.

[MONROE GENERAL TERM, December 5, 1853. *Welles, Johnson* and *T. R. Strong*, Justices.]